UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

06 Civ. 7644 (WCC)

RAYMOND ALZAMORA, MICHAEL DUNN and    :
CREATIVE HOMES INC.,                                    **ECF CASE**

:

                    Plaintiffs,

:

          - against -                                   **OPINION**
                                      :                 **AND ORDER**

THE VILLAGE OF CHESTER and THE PLANNING
BOARD OF THE VILLAGE OF CHESTER,      :

                    Defendants.        :

- - - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

JAMES G. SWEENEY, P.C.
**Attorneys for Plaintiffs**
One Harriman Square
P.O. Box 806
Goshen, New York 10924

JAMES G. SWEENEY, ESQ.

          Of Counsel



HODGES WALSH & SLATER, LLP
**Attorneys for Defendants**
75 South Broadway, Suite 415
White Plains, New York 10601

PAUL E. SVENSSON, ESQ.

          Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiffs Raymond Alzamora, Michael Dunn and Creative Homes Inc. bring this action, pursuant to 42 U.S.C. § 1983, against the Village of Chester (the "Village") and the Planning Board of the Village (the "Board") alleging a violation of their procedural due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. Specifically, plaintiffs claim that they received a special use permit for their property in the Village and the Board thereafter enacted amendments to the Village Zoning Law that prohibited plaintiffs' planned construction without providing them with actual notice of the meeting at which the proposed amendments were discussed. Defendants moved pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the action in its entirety and we granted their motion on June 27, 2007. Plaintiffs now move, pursuant to S.D.N.Y. LOCAL CIV. R. 6.3, for reconsideration of our decision. For the following reasons, plaintiffs' motion for reconsideration is denied.

## BACKGROUND

The facts of this case are set out at length in *Alzamora v. Village of Chester*, familiarity with which is presumed. *See* 492 F. Supp. 2d 425 (S.D.N.Y. 2007) (Conner, J.). The following is a brief summary of those facts relevant to the disposition of the present motion. On September 9, 1998, plaintiffs applied for a special use permit and site plan approval from the Village to construct a multiple-dwelling residential development intended for occupancy by individuals over the age of fifty-five (the "Project") in a zoning district that allowed for such a project at the time. *Id*. at 427.

Plaintiffs submitted their application to the Board, which held a public hearing regarding the plan on August 22, 2000. *Id*. at 427-28. The Board directed plaintiffs to submit a supplemental draft Environmental Impact Statement ("EIS"), which they submitted in December 2001. *Id*. at 428. On

February 26, 2002 a public meeting was held at which plaintiffs' professionals discussed the details of the Project. *Id*. After the February meeting, plaintiffs did not agree to, nor did the Board request, any extensions of time to consider the application but the Board requested that plaintiffs revise and supplement their application, provide a "final" EIS and attend various meetings and workshops. *Id*.

In 2004, during the pendency of plaintiffs' application, the Board made a recommendation to the Village Board of Trustees (the "Trustees") to amend the Village Zoning Law to reduce the allowable density for senior citizens projects. *Id*. The Trustees scheduled a public hearing on November 8, 2004 to discuss the proposed amendments, which, if enacted, would have disallowed the construction of plaintiffs' Project. *Id*. The Board did not inform plaintiffs of its recommendation to the Trustees, and public notice of the hearing was given only by means of a single publication in the local newspaper. *Id*. Consequently, plaintiffs did not attend the meeting and were unable to express their opposition to the enactment of the proposed amendments. *Id*. The Trustees ultimately adopted the Board's proposed amendments as Local Law No. 5 of 2004. *Id*.

In 2005, the Board recommended to the Trustees that the Village Zoning Law be further amended to extend the requirements of Local Law No. 5 of 2004 to all multiple dwelling projects. *Id*. The Trustees scheduled a public hearing on August 8, 2005 to discuss the enactment of the proposed amendment. *Id*. Once again, public notice of the hearing consisted only of a single publication in the local newspaper. *Id*. Plaintiffs were unaware of the meeting and did not attend. *Id*. At the close of the public hearing, the Trustees adopted the Board's proposed amendment as Local Law No. 2 of 2005. *Id*.

Plaintiffs did not learn of Local Law No. 5 of 2004 until July 6, 2006. *Id*. at 428-29. On July 7, 2006, plaintiffs' professionals informed the Board's attorney by letter that the Project did not

conform with Local Law No. 5 and urged the Board to issue the special use permit, particularly in

light of the fact that, in their opinion, plaintiffs' application was deemed granted by virtue of Village

Zoning Law § 98-25(D), which provides:

> Failure of the Planning Board to take action on a special permitted use within sixty-two [] days of the public hearing shall be construed as approval of such use by the Planning Board; provided, however, that the time within which the Planning Board must render its decision may be extended by mutual consent of the applicant and the Planning Board.

*Id*. at 429.  Although the public hearing on plaintiffs' application was held on February 26, 2002,

more than four years earlier, the Board had not yet rendered a decision with respect to that

application.  *Id*.

On July 18, 2006, the Board's attorney sent plaintiffs' professionals a letter stating that the

default provision of Village Zoning Law § 98-25(D) was not applicable.  *Id*.  Thereafter, plaintiffs'

professionals attended a regular meeting of the Board on July 25, 2006 and again advised the Board

that the Project could not meet the requirements of the amendments but requested that the Board

nevertheless grant plaintiffs' application, and the Board refused.  *Id*.  Finally, plaintiffs' professionals

demanded in writing that the Secretary of the Board advise the Village Building Inspector to issue the

special use permit because the Project was deemed approved pursuant to § 98-25(D).  *Id*.  The

Secretary's attorney declined to do so, and this lawsuit ensued.  *Id*.

In our earlier decision granting defendants' motion to dismiss, we determined that plaintiffs'

due process claim failed because they did not have a federally-protected property interest.  *Id*. at 431.

We held that plaintiffs did not have a protected property interest under New York law because their

right to the existing zoning status of their land had not vested.  *Id*.  For a zoning status to vest a

property owner must have undertaken substantial construction and made substantial expenditures

prior to the enactment of an amendment to the zoning ordinance, which plaintiffs had not done.[1]  *Id.*

Plaintiffs argued that they had received a permit by operation of law because the time had passed for

the Board to act on their permit application pursuant to Village Zoning Law § 98-25(D), and the

Board had not rendered a decision.  We determined that the "fact that plaintiffs allegedly received a

permit by operation of law is inconsequential because, absent the initiation of construction, they have

no vested right."  *Id.*  Plaintiffs now ask us to reconsider that decision.


# DISCUSSION

## I.      Standard of Review

A  motion  for  reconsideration  or  re-argument  shall  be  granted  only  if  "the  court  has

overlooked matters or controlling decisions which, had they been considered, might reasonably have

altered the result reached by the court."  *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y.

1988) (internal  quotation  marks  omitted);  *see also*  S.D.N.Y. LOCAL CIV. R. 6.3.    Controlling

decisions include decisions from the United States Court of Appeals for the Second Circuit; they do

not include decisions from other circuits or district courts, even courts in the Southern District of New

York.  *See Ades v. Deloitte & Touche*, 843 F. Supp. 888, 892 (S.D.N.Y. 1994).  Local Rule 6.3 "is

to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have

been considered fully by the court."  *Candelaria v. Coughlin*, 155 F.R.D. 486, 491 (S.D.N.Y. 1994).

The movant's disagreement with the court's interpretation of precedent is not a proper ground for

reconsideration.  *Effron v. Sun Line Cruises, Inc.*, 158 F.R.D. 39, 40 (S.D.N.Y. 1994).  Where the

---

[1]  Plaintiffs did not claim they had undertaken substantial construction or made substantial expenditures on the land; and they do not claim so now.

movants fail to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments they offered on the original motion, the motion for reconsideration must be denied. *See Geary v. Goldstein,* 1994 WL 396044, at *1 (S.D.N.Y. July 27, 1994).

## II.      Plaintiffs' Arguments for Reconsideration

In our earlier decision, we held that plaintiffs did not have a vested right to develop the land because they had not undertaken substantial construction and made substantial expenditures. Plaintiffs argue that the Court focused on the wrong principle of law. They acknowledge that a right to develop property does not survive a more restrictive zoning amendment which is later enacted unless the property owner has begun substantial construction. However, they argue that a landowner has a fundamental "stand alone" right to develop the property, which cannot be extinguished without procedural due process. They reason that the Court should have relied on the latter fundamental right, which became vested by operation of law, without the commencement of construction, before the Village amended the zoning ordinance. (Pls. Mem. Supp. Mot. Recons. at 1.) Plaintiffs claim they earned a special permit for their planned construction by operation of law when the Board failed to take action within 62 days of the public meeting addressing plaintiffs' application for the permit. (*Id.* at 2.) They argue that the resulting right to develop their land is a fundamental aspect of land ownership which cannot be taken away without due process of law. (Pls. Reply Mem. Supp. Mot. Recons. at 1, 4-5.) Plaintiffs rely on a Ninth Circuit opinion and several New York cases for support. (Pls. Mem. Supp. Mot. Recons. at 3, citing *Harris v. County of Riverside*, 904 F.2d 497, 503 (9th Cir. 1990), *Seawall Assocs. v. City of New York*, 74 N.Y.2d 92, *cert. denied*, 493 U.S. 976 (1989) and

*Fred F. French Investing Co. v. City of New York*, 39 N.Y.2d 587 (1976).)

We consider plaintiffs' arguments and citations of New York law to determine if they might reasonably have altered the result reached in our earlier decision.[2]  Although plaintiff made these same arguments in their earlier opposition to defendants' motion to dismiss, we recognize that we did not directly and fully address whether New York recognizes a fundamental "stand alone" right to develop property in this context.  Our determination, that it is inconsequential that plaintiffs allegedly received a permit by operation of law, was correct based on New York law as discussed hereinafter.

## III.      Right to Develop Property Under New York Law

*Seawall* involved a local law that prohibited the demolition, alteration, or conversion of single-room occupancy properties and obligated the owners to restore all units to habitable condition and lease them at controlled rents; plaintiffs challenged this as an unconstitutional taking of private property without just compensation.  *Seawall*, 74 N.Y.2d at 99.  The court recognized that development rights were "standing alone, valuable components of the 'bundle of rights' making up [plaintiffs'] fee interests."  *Id*. at 109.  It held that the effect of the provisions was to unconstitutionally deprive owners of any economically viable use of their properties because it "totally prohibit[ed] the sole use--entirely permissible before the enactment of the law--for which

---

[2]  *Harris* is not persuasive not only because it is not a controlling decision but also because it is inapposite.  In *Harris*, the plaintiff had for some time operated an all terrain vehicle ("ATV") rental facility on his property.  904 F.2d at 500.  The County amended the Community Plan to redesignate plaintiff's property and the immediate surrounding land as residential, without providing plaintiff with notice of the change prior to enactment.  *Id*. at 499.  The court held that "[b]ecause of its exceptional effect on [plaintiff] as a specific, identifiable individual, we believe that the County's decision to rezone [plaintiff's] land is the type of government action which is subject to procedural due process constraints."  *Id*. at 503.

investment properties are purchased: commercial development." *Id*. at 109.[3]

Likewise, *Fred F. French* involved an unconstitutional taking. 39 N.Y. 2d at 591. The court held that "[t]he State may not, under the guise of regulation by zoning, deprive the owner of the reasonable income productive or other private use of his property and thus destroy all but a bare residue of its economic value." *Id*. The court found that the zoning amendment at issue was an "extreme example of a deprivation" and unconstitutional because it deprived the owner of all property rights except the "bare title and a dubious future reversion of full use". *Id* at 597.

*Seawall* and *Fred F. French* are not controlling because this is not a takings clause challenge and plaintiffs do not contend that the zoning amendments "totally prohibit" the sole viable use of their property. Rather, this is a due process challenge involving a zoning ordinance change that did not deprive plaintiffs of all economically viable use of the land.[4] The analysis for such a situation is well settled under New York law, and that analysis is the same one we performed in our earlier decision. Indeed, plaintiffs overlooked the fact that this analysis presupposes that the property owner has a lawful permit before the zoning amendments are enacted; however the right to develop according to that permit will still not vest unless there has been substantial construction.

"Under traditional analysis the issuance of a building permit alone does not confer any rights which survive a zoning change and indeed the permit itself is revoked by the change if no

_____

[3] Plaintiffs argue that *Seawall* recognizes the stand alone development right and holds that the right does not have to be actualized or exercised in order to be protected by the Constitution. (Pls. Reply Mem. Supp. Mot. Recons. at 9.)

[4] The amendments did not entirely eliminate plaintiffs' ability to construct a multiple-dwelling residential development, rather it merely changed the density requirements of an acceptable development plan. Indeed, even plaintiffs recognize that their right to develop is not "unfettered." (*See* Pls. Reply Mem. Supp. Mot. Recons. at 4.)

construction has been commenced or liabilities incurred." *Reichenbach v. Windward at*

*Southhampton*, 364 N.Y.S.2d 283, 288 (N.Y. Sup. Ct. 1975) (citing *Matter of Sibarco Stations v.*

*Town Bd. of Vestal*, 24 N.Y.2d 900 (1969)). "[W]here a more restrictive zoning ordinance is enacted,

an owner will be permitted to complete a structure or a development which an amendment has

rendered nonconforming only where the owner has undertaken substantial construction and made

substantial expenditures prior to the effective date of the amendment." *Ellington Constr. Corp. v.*

*Zoning Bd. of Appeals of Inc. Vill. of New Hempstead*, 77 N.Y.2d 114, 122, 125 (1990) (finding

petitioner had vested right where town approved petitioner's plan and petitioner installed various

improvements on the land prior to amendments to applicable zoning ordinance); *see Town of*

*Orangetown v. Magee*, 594 N.Y.S.2d 951, 957 (Sup. Ct. Rockland County 1992) (holding that in

order to direct reinstatement of defendants' building permit, defendants must prove they had a vested

right by showing that the revoked permit was legally issued, they made substantial improvements and

incurred substantial expenses, and the permit was illegally revoked); *Reichenbach*, 364 N.Y.S.2d at

286, 289 (holding that, although defendants were issued a permit and commenced installation of

footings and foundation before the zoning amendment was enacted, their rights had not vested).

If, under New York law, a legally issued permit expressly granting a property owner the right

to construct specified improvements on his property can be revoked by a later enacted ordinance

unless that construction has commenced before such enactment, surely a construction right acquired

through mere inaction by the zoning board would likewise be extinguished.  In summary, plaintiffs

have not pointed out any controlling authority that mandates a different result in this case; nor have

they shown that we overlooked any critical matter in our earlier decision. *See Adams*, 686 F. Supp.

at 418.  Plaintiffs' arguments for reconsideration amount to nothing more than a disagreement with

our conclusion that they did not have a protected property right. That disagreement is not a basis for reconsideration of our conclusion. *See Effron*, 158 F.R.D. at 40.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for reconsideration is denied.

SO ORDERED.

Dated:   White Plains, New York
       February 8, 2008

                                               _____
                                             Sr. United States District Judge